Good morning, your honors. My name is Michael J. Truman. I represent Mr. Nora. I represented Mr. Nora in the district court in these proceedings as well. The question I would like to ask the court to focus on has to do with the comments in both the district court's opinion and in the government's brief that the encounter between Mr. Nora and the officers when Mr. Nora was on the porch had no Fourth Amendment implication. If that is a correct interpretation of the circumstances, then I submit the question becomes, what then is the order from the officers to Mr. Nora saying, stop, if that did not implicate any Fourth Amendment considerations? If it does not implicate any Fourth Amendment considerations, then Mr. Nora is free to enter the residence. There's no limitation on his movements being imposed by the officer. That means that he is then arrested when he enters the residence under the government and the court's, district court's findings. If that's the case, then Mr. Nora was arrested in his residence on a misdemeanor without a warrant. The government's counterargument is that there was probable cause to arrest Mr. Nora. That probable cause only existed with regard to what the officers observed on the porch and having observed, according to the officers' testimony and the court's findings, the three men outside the fence before that. The only thing that the officers saw was a handgun in Mr. Nora's right hand, according to the testimony, before he entered the house. While on the porch. Yes, yes, while he's on the porch. Under California law, both as cited by the government and in other cases, seeing the weapon is not sufficient to establish probable cause and thus subject a defendant, a potential defendant in California to either search or seizure. Well, that's a little broad statement. Yeah, let's stop right there. All right. Go ahead. No, please. No, I mean, help me with understanding why the officer did not have probable cause to believe that Mr. Nora had in fact violated, I guess it's a 25850A, because he did see him out on the sidewalk, so in a public place, with a firearm. Well, I take that back. He could have inferred when he saw him later, what, 10 seconds later on the porch with the gun, that he must have had it in his hand when he was standing on the sidewalk, right? Well, for probable cause purposes. I'm not saying he proved it beyond a reasonable doubt, but for probable cause purposes, he couldn't draw that inference? And what California law says, both as cited by the government's brief and as cited by other cases, is merely observing a firearm, regardless of location, without additional grounds for suspicion, does not provide probable cause to believe it is loaded in violation of California Penal Code Section 12031. And what are you citing for that authority? There's a cite in the government's brief and also People v. Muntz, M-U-N-I-Z, at 4 Calab 3rd, 562 at page 567. And that purports to say that just seeing a firearm does not establish the probable cause? That alone. So, for example, if I walk into a gun store and I see somebody picking up a firearm, that's not probable cause. I get that. But in this case, you're talking about a man who was with, I can't remember, one or two people. Two people. Two people in a street at night in Watts. Very, very high crime area. Lots of murders. Lots of drug deals. Lots of problems going down. The guy sees the officer as he goes to his porch. They see a handgun. He's nervous. They tell him to stop and he goes in. You can't really isolate the gun alone, can you? Don't you have to look at the circumstances surrounding the seeing of the gun? And I think you have to be careful about those facts, Your Honor. Okay. Correct me if I'm wrong. And here's why I say that. The seeing of the weapon takes place as Mr. Nora has turned to enter his residence. This is not a set of circumstances. The timing sequence, therefore, becomes Mr. Nora's on his way into the house, and that's when the officer says he sees the weapon in his right hand. Okay. Well, let's say that's true. Judge Walker made the point, can't the police officer infer, since this all occurred very rapidly, that he had that handgun when he was out on the street? But the issue is whether it's loaded, not whether or not. You don't know that in advance. Police officers can't know that the gun is loaded or not loaded, can they? And that's the point of the California cases. You cannot presume, it does not provide probable cause to believe that it's loaded, because it is the loaded firearm in the public location that is the subject of the statute, not any firearm. Can you address that Subsection B, then, of that statute? Because that goes directly to the point I think you started with, which is I would be inclined to interpret the officer's command when he sees Mr. Nora on the porch as exactly what Subsection B is talking about. A request to inspect the weapon to see if, in fact, it's loaded, and it says refusal to allow the police officer to inspect a firearm pursuant to this section constitutes probable cause for arrest. So why, when Mr. Nora says, oh, thanks, I'm going in the house, why isn't that construed as a refusal under B, Subsection B? Because under B, number one, it talks about – We're talking B or E? B. B as in boy. Under B, it talks about in a public place. This observation does not take place in a public place, and there is no authority under B to inspect in a private place. So that's the distinction. We made that in our reply brief as to why B doesn't bootstrap the officer into being able to have probable cause, number one. And two, he didn't ask to inspect it. Well, he didn't have a chance to because the guy ran in the house. But let's say that he – let's say that Mr. Nora was standing out on the sidewalk when the officer pulls up, right? The officer gets out of the car. Mr. Nora immediately just steps right behind the fence there, on the other side of the fence. And then the officer says, hey, I just saw you – I now see you have a gun. I'd like to inspect it. And he runs in the house. You're saying that would not trigger B, Subsection B? No, I was – well, first of all, those facts miss that the officer did not keep Mr. Nora under observation for the entirety of the time. Number one. But it's like a 10-second interval, right? Well, 10 seconds is not an insignificant amount of time. In fact, it's 10 to 20 seconds. And the officer does not claim, and did not claim, that he saw anything in any of the men's hands that indicated the presence of a weapon. Right. So he's speculating. He's just drawing a reasonable inference that, hey, I saw a guy standing on the sidewalk 10 seconds ago. Now I see him on the porch and he's got a gun in his hand. He probably had the gun in his hand when he was standing on the sidewalk 10 seconds earlier. That doesn't sound like speculation. It's not speculation. There's absolutely no connection between the presence of the weapon on the porch and the presence of the weapon outside the fence on the sidewalk. I'm in trouble with that. For the same reason I think Judge Watford is. I mean, whether you agree with the Supreme Court or not, the Supreme Court seems to be saying in its cases, most recently in Metherschmidt, admittedly, a qualified immunity case, but they're just saying, you know, it's a question of whether it's unreasonable for the officers to make certain assumptions based upon, you know, the area, what had occurred before. And in this case, you have Mr. Nora with two other people on the public street. Very quickly, as Judge Watford pointed out, 10 seconds in the scheme of the real world is really very quick. And he's there. They see the firearm. This is an area lots of drug deals go down. People have firearms and they don't keep them, by officers' normal knowledge, they don't keep them blank. They want bullets in them to protect themselves and their trade and so on if, in fact, that happens. So why is it unreasonable for them to tell him to stop to search the weapon, to see if it is, in fact, loaded? Well, that hypothetical has a lot of different pieces to it. Okay, well, take it apart and help me. What am I missing? Well, one of the things is when you think about the time period, consider the fact that there was a sufficient time period for what to happen, for the three men to move from outside the fence to inside the fence and onto the porch. So whether it's 10 seconds or 20 seconds, whether it's a long time or whether it's a short time, the officers see them outside the fence, they next see them on the porch. So there's not only a time period, there is a distance movement, number one. You know, the time's running, and I better tell you what's bothering me about this case, and that's I'm not sure that I'm able to see why there are exigent circumstances that allow what amounts to, and the district court correctly concludes, an in-house arrest without a warrant. Why? What are the exigent circumstances? There aren't. And it's not just an in-house arrest without a warrant. It's an in-house arrest for a misdemeanor without a warrant, which carries under the Supreme Court case is really a different perspective, and specifically under Welch v. Wisconsin. It notes that it's one thing when you're talking about a felony offense, in terms of some of the questions, the comment, the approach that Your Honor is taking. It changes significantly. Now, is carrying a loaded weapon in a public place under California law a misdemeanor, not a felony? It would be a misdemeanor. If it's loaded? Even if it's loaded with the statute as it existed at the time, and it's even the case under the current statute if you look at it. Are the officers, do they have to have proof that a felony has been committed, or can they, based on the circumstances, believe that a felony has been committed without having the proof in advance? In other words, whether it's a felony or a misdemeanor depends on a number of things in the statute, right? And you can't really tell that until after the person has been detained. So the officers are going to guess? Except for the fact that you're looking at the probable cause for the arrest. And so you can't look at the probable cause for the arrest when we see what we find. You have to look at the probable cause. That's not what I'm asking you. All right. What I'm saying is, if I understood you correctly, if the officer saw a handgun, well, let me change the facts a little bit. Let's assume for a moment that the officers knew Mr. Nork, and they knew he was a convicted felon, and they saw him with a handgun. There would be no question in your mind there that a probable cause would be established, right? I would agree. Okay. So in this case, I gather they didn't know Mr. Nork. Is that right? At least there's no evidence of that. Didn't know the residents. Okay. Didn't know Mr. Nork. Okay. Didn't know any of the other people who were on the street. They had no information about them at all. Okay. I gather there was information. It's a very dangerous neighborhood, lots of problems in that regard. But they see him with a handgun. He moved very quickly because they saw each other. He moved in. They tell him to stop, and they see him with a handgun. He goes right in. He turns off the lights. Now, based upon that conduct, I gather you're saying that because they didn't know this guy was a convicted felon, they have no basis for determining or concluding that he, because he could be a felon, they couldn't stop him because it could just as well have been a misdemeanor. Is that correct? What I'm saying is that the probable cause analysis for the arrest changes under the Supreme Court cases, and we're talking about the in-home warrantless arrest. Right. It changes when we're talking about a felony versus when we're talking about a misdemeanor, even under the U.S. Supreme Court's analysis. So when you're looking at the question of the officer's conduct, you have to look at it, and you have to look at it in the context of what they did or didn't know. Let me back up and ask the question that I asked before and make sure I understand your answer to it, and the government can agree or disagree. Is, under California law, is carrying a loaded weapon in a public place a misdemeanor or a felony? If those are the only facts, it's a misdemeanor. Okay. And the argument the government is making is that there was probable cause to arrest him for that. And in order to do that, the only piece of evidence is that they saw the gun. No, I understand all that. So now I'm going to ask the government, that may be the better way to do it on exigent circumstances rather than take you over time to do that. Let's hear from the government and you'll get a chance to respond. Thank you. Good morning, Your Honor. May it please the Court. Cheryl O'Connor on behalf of the government. I'd like to address a few facts or correct a few facts regarding Mr. Tremon's argument. First of all, it is correct that, absent any other facts, under California Penal Code carrying a loaded firearm in a public place is a misdemeanor. But as in this case, where the defendant has already sustained a felony conviction, it's a felony. Well, of course. But they did not know at the time that they did all these things that he was a felony. Well, that's correct. They had no way of knowing that. So far, at least, until you tell me more, they only had probable cause to believe that he'd committed a misdemeanor. Unless you think that a black man in this neighborhood is so likely to have been convicted of a felony that they can get probable cause on that, too. Well, no, of course that's not my argument. But at the time that they're developing their probable cause, they don't know one way or another whether this is going to be a misdemeanor or a felony. Well, I'm not sure that's right. The evidence they have from which they infer probable cause is evidence that gives them probable cause for a misdemeanor. Unless you tell me more. What more is there that tells us there's probable cause to think that he's committed a felony? Well, at this point in time, there's no indication one way or another whether it is a felony or a misdemeanor because they simply don't have that fact. Wait a minute. No. Tell me what information they had that gives them probable cause to think that a felony had been committed. At this point in time, they don't have any information to conclude. Okay. In other words, your argument has to be based then on They have probable cause to make an arrest for a misdemeanor. Correct? But they don't have probable cause to make an arrest for a felony. Is that right? I think that's what you just told me, but I want to be clear. They have probable cause to arrest the defendant for carrying a loaded firearm in a public place. Which is a misdemeanor. Which is either a misdemeanor or a felony. Wait a minute. I understand that. But what do they have probable cause to believe he did? They have probable cause to believe that he carried a loaded firearm in a public place. Which is a wobble. And do they have probable cause to believe that he did something more than a misdemeanor? They don't have any information in support of that at this point in time. That's correct. The answer is no. Let me be sure I understand the colloquy here. Is it the government's position that since, unless they know this individual, know he's a convicted felon, there's no way for any officer to determine under these circumstances in advance whether it's a misdemeanor or a felony. It's clearly a crime. That's correct. And so the point is that there is probable cause to arrest. Whether it's for a felony or a misdemeanor gets determined later. I gather my colleague is concluding that you have to know exactly what it is beforehand. And the government, I gather, disagrees with that. That's correct, Your Honor. But that's not what I'm arguing. I'm only asking what did the officers have probable cause to arrest for? It seems to me if they had probable cause so they could infer that the weapon had been loaded on the sidewalk, that they do have probable cause to believe that there was a misdemeanor. They have no further information that will give them probable cause to believe that it has been a felony. They get information later that tells us it was a felony because he's a felon in possession. But the only information they have at that point gives them probable cause for the felony. Excuse me, probable cause for the misdemeanor. Well. Or am I wrong? Your Honor, it's the government's position that they're incapable at that point in time in any circumstance, that until you identify the defendant's criminal history or lack thereof, that the officer is incapable of determining whether the offense is going to turn out to be a misdemeanor or a felony. Okay. Let's be clear on this. I think I just heard you say that the officers at that time did not have enough information to decide  I apologize, Your Honor, because I recognize that we are, that I'm not sufficiently answering your question or perhaps. Well, it's a yes or no question. Did the officers have probable cause at the time that Mr. Nara gets, goes into the house with the gun that they've just seen, did the officers have probable cause to determine that he had committed a felony? They, no. No, okay, that's the answer. They did not have sufficient information.  to determine that it was only a misdemeanor. Well, of course that's right. I understand that. Okay. I'm asking you what they had probable cause to believe. They had probable cause to believe that he had committed a misdemeanor if we make the inferences that the government asked us to draw. But you're telling us that they did not have enough information to go beyond that at that point. Before you answer the question, I'd like it to be wrapped in what my colleagues asked about. And perhaps I'm mistaken, but I thought what we're talking about is probable cause to arrest. That's correct, Your Honor. And at that point, you may not know all of the details of what the person has done. But if you have probable cause to arrest someone, then there's probable cause exists. You don't have to say I have probable cause that a felony has been committed or that a misdemeanor has been committed. You have probable cause to arrest. Is that correct or am I missing something? That's correct, Your Honor. And it's either a misdemeanor. I'm not contesting that point. Okay. What we're headed for is agencies and circumstances. And it may make a difference as to whether or not there's probable cause for misdemeanor or probable cause for a felony as to what the agencies and circumstances are that would be required to show. You're having to colloquy here, but I gather what we're questioning here, if we get to the agencies and circumstances, is whether they had the ability to make an arrest in the home. But originally, when they had probable cause, he wasn't in his home, was he? He was not in his home. When they first saw him, he was on a public street. Right. Based on all of the inferences from the other facts that they observe during the time that he's on the porch, they can conclude that even if it's just a misdemeanor, it's a misdemeanor that they observed committed in their presence. And if there are additional facts, it can be a felony. But they also have probable cause under what's alternately been referred to as subsection E if you're using the old codification or subsection B if you're using the new codification. They also have probable cause because the defendant refuses an attempt or what can be interpreted as an attempt to inspect the weapon, and he takes the weapon with him inside his home. And is that a misdemeanor or a felony? That is not, the way that I understand the California statute, that is not a separate offense, but it does under the legislation provide the officers with probable cause that the crime itself has been committed. But I think I understand your answer. You're not telling me that that has moved us from probable cause for misdemeanor to probable cause for felony. That is correct, Your Honor. The subsection BE doesn't affect that. Can we please get to extra circumstances? What I see here is, and I take everything that Judge Wilson did in terms of resolving credibility and take the facts as Judge Wilson found them. Judge Wilson says that here's what happened. According to the testimony of the officers whom he finds credible, the officer sees him on the porch with a handgun held in his right hand down to the side. In Judge Wilson's terms, after ready, he rushes into the house trying to conceal it. The lights then go off. There is then an in-house arrest. This is the technical term that Judge Wilson relies on. Warrantless. In order for that to be a proper arrest, there need to be exigent circumstances, correct? Correct. So far so good. What are the exigent circumstances in the sense of danger to the police or others, danger of destruction of evidence? I mean, help me with that. The exigent circumstances in this case, as Judge Wilson found, are danger to the community and danger to the police officers. And from what can we infer danger to the community and the police officers? We can infer from that the fact that, number one, we're in a high-crime neighborhood that has suffered. The whole reason the officers are there is that not only is it, to begin with, a high-crime neighborhood, but they've suffered a spike in crime recently. And so the police force has undertaken additional patrols in the area. So we have that fact. We have the defendant's behavior on the porch, which the officer describes as being nervous. He stiffens. His body stiffens. His eyes widen. According to the officer, whom we believe, he's clearly, he doesn't like where he is. He's trying to get out of there. He's trying to hide the gun. He doesn't do it successfully, and he gets into the house despite being told to stop. Yes. He pushes his friend out of the way and gets in the house. The friend follows him in the house. And then immediately thereafter, all the lights go dark in the residence. And so from those facts, it's reasonable for the officers to be concerned that either this person, who has now hastily retreated into his residence and turned out the lights, may present a danger either to the other individual in the home, to any other people who are already present in the home, or to themselves. Do you have any case that finds exigent circumstances in a case like this? All of the cases discussed by Judge Wilson are cases in which we've had prior shootings. We've got alcoholism. We've got all kinds of reasons to believe that the person is actually dangerous. Here, we've got nothing in the sense of prior shooting. We've got nothing in the sense of alcohol. We have nothing in terms of knowledge about prior calls for domestic violence. The other exigent circumstances all have something like that. It's true that we have – it's true that our facts are limited to the events of this evening, that the officers knew nothing about this individual previously, and that they knew nothing about the history of this residence, had there been prior call-outs from there, et cetera. All they've got is that the guy has a loaded – what they think is a loaded firearm, and he goes into the house to try to avoid them. Yes. What they have – as the district court found, they have probable cause to believe that the firearm was loaded. I got that. He goes into the house to avoid them, but he also immediately shuts off all the lights in the residence, obscuring his activity from their view. So if a person simply doesn't want to talk to the police, as they have every right to do, they decide, these officers approach me, I'm on my porch, I don't feel like talking to them, I'm just going to go in my house, there's something suspicious, something additionally suspicious about them going in the house and turning out all the lights so that you can't see the activity they're in. Yeah, but exigent circumstances is an excuse for making an arrest without seeking a warrant. I mean, under the facts that the officers thought they had, they had grounds to get a warrant. Yes. And so the exigent circumstances is required for them to make the arrest now without waiting however long it's going to take them to get a warrant over the telephone, which is going to be, what, half an hour? I think the officer testified that it would be longer than a half an hour. However long it's going to take them to get a telephone warrant. I'm sorry, not an insignificant amount of time because you still have to write out the warrant and collect all the paperwork. But yes, because... While they wait, I guess they can get into a squad car and be across the street. Excuse me? If they're worried about getting shot while they're waiting for the warrant, they can get back in their car and be across the street. Well, the officers can take cover, yes. But one of the other factors that Judge Wilson relied on was that this was a residential neighborhood and that there were other homes in close proximity to this residence, such that if the defendant were to attempt an ambush on the officers, it would jeopardize the neighboring residence. Not only that, but without surrounding the residence, they wouldn't have been able to ascertain that the defendant had remained in the home. Do you have any case that says there's exegetic circumstances where the information leading the officers to think that they have exegetic circumstances is so slight? Because I can't find one. I don't have one at the ready, Your Honor, and we haven't cited one in our brief. Let me ask you this. Let's say, let's just assume a couple of things. Number one, that the officers only had probable cause to believe that Mr. Nora had committed a misdemeanor, okay, and that the arrest was invalid, okay, that the process of getting him to come out and, you know, that there were no exegetic circumstances, so that the arrest was invalid. Do you still lose? I mean, do you still win, rather? I'm sorry, can you repeat that? The arrest was invalid. The arrest was invalid. And he had only committed a misdemeanor? He had probable cause to believe he had a misdemeanor. Well, if the arrest was invalid, we don't win. Why? Fruit of the poisonous tree, I guess. I would have assumed you still do win on the theory that they did have probable cause to get an arrest warrant for Mr. Nora in that home and presumably at the same time to search for the weapon. You would then look at the search warrant affidavit that they did submit, excise just like Judge Wilson did, the information that came from the protective suite, see if what remained was enough for them to gain entry to the house and search for the things that ultimately were found. I assume if they were looking for a gun, they still would have found everything else that was found, and on that theory, the evidence was still admissible. And I thank you, Your Honor. My answer was incorrect. I've been persuaded by the court. I think that's correct. That's how I look at the case. You're saying we're talking inevitable discovery. That's to say you're guaranteed to get a warrant and then you're guaranteed to find all the stuff? Essentially, yes. I don't think the executive circumstances matter because even if you took away what they learned as a result of the invalid arrest, they were still going to be able to gain entry to that house and search in all the places that they ultimately did and found the various guns and drugs. I think that's correct, Your Honor. I think that at most you would lose the statement that the defendant made that he had narcotics in the home, but given the fact that the officers observed a firearm and when he came out of the home, he had no firearm on him, there was still probable cause to believe that the firearm was, in fact, the evidence of the crime was in the home. Have you made in your brief the argument that Judge Watford just made for you? We did not make that. We did not make that in our brief or I would have made it here. So what are we supposed to do with the fact that you didn't make the argument? Well, the defendant didn't raise that claim either, so we didn't respond to it. You mean the defendant didn't raise actions and circumstances? No, no, no. The defendant didn't raise the matter of whether we could still ‑‑ I'm sorry. The defendant argued that this was an invalid arrest and, therefore, the evidence should be suppressed. The defendant did not make the argument on your behalf that Judge Watford just made on your behalf. That's correct. That doesn't matter if you're ‑‑ and I'm just saying this argument. I'm not saying I agree. But if you are affirming the district court, you can affirm the district court on any ground, right? Yes, Your Honor. So if, as a matter of law, Judge Watford were correct, there would be a basis for affirming, right? That's correct. Even if there were not exigent circumstances and there were an invalid arrest? That's correct. Okay. Thank you. Let's hear from the other side. You've got two minutes on the clock, please. I think the reason why the government didn't make that argument, Your Honor, is because it's a bad argument. Okay. And the reason why it's a bad argument ‑‑ Tell Judge Watford why it's a bad argument. Yes, sir. I intend to do that. The reason why is because you not only have to take out of the affidavit the connection of the warrant. You have to take out all of the information beyond what was ‑‑ that Judge Wilson took out. In other words, you take out everything except for seeing a gun on the porch in his hand. That's it. And under California law, that's not enough for probable cause. Start with my hypo, because I disagree with the premise you started with. And let's assume that they had probable cause to arrest him for a misdemeanor. Okay? If they have probable cause to arrest him for a misdemeanor in that home that they saw him go into with a gun, they have ‑‑ I would submit to you they would be able to get a warrant to not only go in and arrest him, but to search for the weapon. And in order for that to be true, the only facts that could have been in the warrant and whether or not a state court judge would have issued the warrant, we don't know, are that there was a gun in his hand on the porch. And so the state court judge would have had to know that under California law, that's not enough. No, well, see, you're just resisting the premise of my hypothetical, which is that I reject your view that they didn't have probable cause to arrest. I'm saying that they did. If I'm persuaded that they had probable cause to arrest him for a misdemeanor, right, they know that he went in that house with a gun that they saw him take in there, right, that they could have applied for a search warrant, not just a search warrant, an arrest warrant and a search warrant to search the home for the weapon. And I hear what you're saying, that if they didn't have probable cause to arrest him, then the whole thing collapses. I'm with you on that. But if I disagree with you on that point, why is the argument a bad one? What you're, in effect, saying is that the warrant process is irrelevant. And the Supreme Court has said that's not true because what the officers thought and what a detached neutral magistrate would have thought about those facts are the difference in the circumstances. Your premise is that a detached neutral magistrate would have reached exactly the same conclusion that the officer did. That's the only way your premise works, because a detached neutral magistrate would have also had to conclude that there was probable cause for an arrest and a search in order to issue the warrant. Agreed. And, therefore, that's a legal determination that we can make whether probable cause exists or not, right? But my point is that that's the difficulty with the analysis that you're doing, is you're reaching the conclusion that the detached neutral magistrate would have reached the same conclusion that the officers claimed that they reached. It's no different from the analysis that Judge Wilson performed in his order. He just excised that one piece of information that came from the illegal protective suite that was conducted, looked to see whether the remaining evidence would have led a neutral magistrate, nonetheless, to issue the warrant, and found that that would have happened, right? No, but that's not what Judge Wilson did. He didn't excise all of the information in the warrant in the affidavit. He only excised the little piece. Conceptually, it's because I'm articulating the same process, am I not? What's different about what I'm suggesting? Conceptually. Conceptually, it's the difference in whether or not they're waiting for a warrant and whether a detached neutral magistrate would have issued it. That's the difference. And Judge Wilson didn't do that analysis. Let me follow up on Judge Watford's question. If we were to conclude that it's likely that a detached neutral magistrate would have issued an arrest warrant with attendant search, does it matter, then, that there were no agent circumstances? If you accept the premise with which Judge Watford is beginning. Can I just be sure I understand the question? Are you suggesting that they don't go in before they get the warrant, right, or they do go in? No, I'm suggesting that what happened exactly happened after. But I'm suggesting as we reconstruct what might have happened, that if they had sought a warrant, they would have gotten a warrant, and then having the warrant, things would have unfolded pretty much the way they did. And so I'm asking you basically, I'm just trying to, I'm following up on Judge Watford's question as clearly as I can to say, Assume that we conclude that it is likely that a detached neutral magistrate would have issued a warrant. Does it make any difference that there were no agent circumstances? I mean, that's Judge Watford's question, and I'm just trying to make it clean with a yes or no. I would have to say that it does, that it doesn't make any difference. I think the answer is yes, that it doesn't make any difference, because the exigent circumstances become irrelevant once you have acquired a warrant. Okay, I got it. My point is that given the nature of this case and the structure of the record, I don't believe this Court can reach that conclusion. No, you're back to the point of no problem. Okay, thank you. Thanks both sides for your argument. I'm now to a point where I think I might understand the case. This will be on your law school exam. Okay.
judges: Fletcher, Smith, Watford